IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

David Otis,

    Plaintiff,

v.

Union Pacific Railroad Co.,

    Defendant.

Case No. _____

**COMPLAINT
(JURY TRIAL DEMANDED)**

## PARTIES

1. Plaintiff David Otis ("Otis") was born in 1956, and is 61-years-old. He is a resident of Ogden, Iowa.

2. Defendant Union Pacific Railroad Co. ("Defendant" or "Union Pacific") is a railroad carrier engaged in interstate commerce. Its headquarters are in Omaha, Nebraska.

3. Union Pacific employs approximately 43,000 persons and runs more than 8,000 trains on 30,000 miles of track all across the country west of Chicago and New Orleans, including Iowa.

4. At all relevant times, Union Pacific was Otis's employer.

## JURISDICTION AND VENUE

5. Otis brings this action pursuant to the American with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*

6. Because this matter arises under federal law, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

7. This Court has personal jurisdiction over the parties because Otis resides in Iowa, Union Pacific conducts significant business throughout Iowa, and the case arises out of Otis's employment with Union Pacific in the City of Hampton, Franklin County, Iowa.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant is a resident of this judicial district, and because a substantial part of the acts or omissions giving rise to Otis's claims occurred in the district.

## FACTUAL ALLEGATIONS

9. In the spring of 2016, Defendant violated the ADA and ADEA by taking away Otis's job and forcing him into early retirement.

10. At that time, Otis was a 38-year veteran of the railroad, having started working for Union Pacific on or about April 13, 1978.

11. Otis has osteoarthritis of the right knee, as well as type II diabetes.

12. For many years, Otis had been a Foreman and, more recently, a Roadway Equipment Operator, or "REO," for Union Pacific. Specifically, as an REO, Otis operated a rubber tire backhoe. Otis's work as a system rubber tire backhoe operator did not require him to perform track labor on foot.

13. However, from March 23 through 26, 2016, Otis had to do track labor on foot, for the first time in decades. During that time period, Otis "tweaked" his right knee, causing him pain.

14. On Easter Sunday, March 27, 2016, Otis was at work for Defendant. His knee was causing him pain, so he requested to be allowed to go home early to rest it.

15. Otis's foreman granted Otis's request, and drove Otis from the worksite to Otis's vehicle so that he could drive home. Otis did not know it at the time, but Defendant would never allow Otis to come back to work after that day.

16. After resting his knee on March 27, Otis showed up for work on time the next day, March 28, ready to work. However, Defendant would not allow Otis to work. Instead, Otis's supervisor told him to wait in his trailer, and that a Union Pacific nurse would be calling him.

17. Otis waited in his trailer all day, and never received a call.

18. The next day, March 29, Otis showed up for work again, and was again told to wait in his trailer.

19. Finally, in the afternoon of March 29, a Union Pacific nurse called Otis and told him that he had been "taken out of service" (i.e., removed from his job without pay) for a "fitness for duty" evaluation.

20. During this phone call, Otis objected to being removed from his job, and expressed an intention to talk to a lawyer about what he perceived as Union Pacific's discriminatory conduct.

21. Union Pacific sent Otis to perform a "functional capacity exam" on or about April 13, 2016. At the functional capacity exam, Otis was put through a series of tests and exercises to determine his physical capabilities. Even though Otis was not a track laborer, Union Pacific had Otis evaluated based on the job duties of a track laborer. The functional capacity exam indicated that Otis could likely have performed the duties of a track laborer, even though those were not his duties.

22. Further, Otis certainly could have performed the duties of his actual job as a system rubber tire backhoe operator.

23. Nevertheless, on or about April 25, 2016, Union Pacific wrote to Otis to inform him that it had imposed work restrictions on Otis. These restrictions prohibited Otis from (a) climbing; (b) working on or near moving trains; (c) walking or standing for more than 15 minutes; (d) walking on uneven surfaces; and (e) working at heights above 4 feet. Union Pacific declared these restrictions "permanent," and informed Otis that it could not accommodate the restrictions it had imposed.

24. In determining the restrictions he would impose, Union Pacific's Associate Medical Director specifically noted that he understood Otis would be retiring soon. In fact, Otis intended to continue working, rather than retiring.

25. In a phone call with Union Pacific's health and medical services department on or about May 2, 2016, Otis requested that Union Pacific engage with him in the interactive process.

26. Nevertheless, Union Pacific did not engage with Otis in an interactive process to determine whether these restrictions were necessary, or to determine whether the restrictions could be reasonably accommodated.

27. Union Pacific never allowed Otis to return to work.

28. Otis timely filed a charge of discrimination with the EEOC.

29. The EEOC sent Otis a Notice of Right to Sue, which he received on November 3, 2017.

## CAUSES OF ACTION

## COUNT I

### VIOLATIONS OF THE ADA
### DISABILITY DISCRIMINATION—DISPARATE TREATMENT

30. Otis has an actual, recorded, and/or perceived disability under the ADA.

31. Otis is a qualified individual under the ADA.

32. Section 12112(a) of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

33. Union Pacific discriminated against Otis on the basis of disability when it, among other things, removed him from his job, imposed permanent medical restrictions on him, failed to provide him with reasonable accommodations, and permanently blocked his return to work.

34. Because Union Pacific violated 42 U.S.C. § 12112, Otis has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Otis is also entitled to attorneys' fees and costs incurred in connection with these claims.

35. Union Pacific committed the above-alleged acts with reckless or deliberate disregard for Otis's rights and safety. As a result, Otis is entitled to punitive damages.

## COUNT II

### VIOLATIONS OF THE ADA
### DISABILITY DISCRIMINATION—FAILURE TO ACCOMMODATE

36. Otis has an actual, recorded, and/or perceived disability under the ADA.

37. Otis is a qualified individual under the ADA.

38. Section 12112(b)(5)(A) of the ADA defines "discriminat[ing] against a qualified individual on the basis of disability" as including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . ."

39. Union Pacific failed to accommodate Otis when it, among other things, imposed permanent work restrictions on him that blocked his return to work, and refused to engage with him in an interactive process to determine whether those restrictions were necessary or whether a

5

reasonable accommodation was possible.

40. Because Union Pacific violated 42 U.S.C. § 12112, Otis has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Otis is also entitled to attorneys' fees and costs incurred in connection with these claims.

41. Union Pacific committed the above-alleged acts with reckless or deliberate disregard for Otis's rights and safety. As a result, Otis is entitled to punitive damages.

## COUNT III

### VIOLATIONS OF THE ADA
### DISABILITY DISCRIMINATION—DISPARATE IMPACT

42. Otis has an actual, recorded, and/or perceived disability under the ADA.

43. Otis is a qualified individual under the ADA.

44. Discriminating against a qualified individual on the basis of disability includes "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position and is consistent with business necessity." 42 U.S.C. § 12112(b)(6).

45. Discriminating against a qualified individual on the basis of disability also includes "utilizing standards, criteria, or methods of administration . . . that have the effect of discrimination on the basis of disability". 42 U.S.C. § 12112(b)(3).

46. Union Pacific discriminated against Otis on the basis of disability.

47. Union Pacific's fitness for duty policies and practices disproportionately—and adversely—impact qualified individuals with disabilities.

48. Union Pacific uses qualification standards that screen out, and tend to screen out, individuals with disabilities.

49. Union Pacific cannot show that such qualification standards are job-related and consistent with business necessity.

50. Because Union Pacific violated 42 U.S.C. § 12112, Otis has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Otis is also entitled to attorneys' fees and costs incurred in connection with these claims.

51. Union Pacific committed the above-alleged facts with reckless or deliberate disregard for Otis's rights and safety. As a result, he is entitled to punitive damages.

## COUNT IV

### VIOLATIONS OF THE ADA
### UNLAWFUL MEDICAL INQUIRIES

52. At all relevant times, Otis was an employee of Union Pacific.

53. Section 12112(d)(4)(A) of the ADA provides:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

54. Union Pacific violated 42 U.S.C. § 12112(d)(4)(A).

55. Because Union Pacific violated 42 U.S.C. § 12112(d)(4)(A), Otis has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Otis is also entitled to attorneys' fees and costs incurred in connection with these claims.

56. Union Pacific committed the above-alleged facts with reckless or deliberate disregard for Otis's rights and safety. As a result, he is entitled to punitive damages.

## COUNT V

### VIOLATIONS OF THE ADA
### RETALIATION

57. The ADA prohibits retaliation against an individual because he opposes unlawful discrimination, seeks accommodations, files a complaint, or testifies, assists, or participates in an investigation or proceeding under the ADA. 42 U.S.C. § 12203. The ADA also prohibits coercion, intimidation, threats, or interference with an individual's exercise or enjoyment of his rights under the ADA. 42 U.S.C. § 12203(b)

58. Union Pacific retaliated against Otis, after he objected to being removed from service and stated his intent to call a lawyer, by issuing unnecessary permanent restrictions on Otis, refusing to accommodate those restrictions, and preventing Otis from returning to his job.

59. Because Union Pacific retaliated against Otis in violation of the ADA, Otis has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Otis is also entitled to attorneys' fees and costs incurred in connection with these claims.

60. Union Pacific committed the above-alleged facts with reckless or deliberate disregard for Otis's rights and safety. As a result, he is entitled to punitive damages.

## COUNT V

### VIOLATIONS OF THE ADEA
### AGE DISCRIMINATION

61. The ADEA provides that it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." It further provides that it is unlawful for an employer because of age to "limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise affect his status as an employee."

62. Union Pacific violated the ADA when it removed Otis from his job and permanently blocked his return to work because of his age.

63. Because of Union Pacific's violation of the ADEA, Otis has suffered and will continue to suffer loss of income and other damages in an amount in excess of $75,000. Otis is also entitled to attorneys' fees and costs incurred in connection with these claims

64. As a direct result of Union Pacific's willful and unlawful conduct, Otis is also entitled to liquidated damages

## REQUEST FOR RELIEF

**WHEREFORE, Otis requests judgment against Union Pacific as follows:**

1. That the practices of Union Pacific complained of herein be determined and adjudged to constitute violations of the ADA and ADEA;

2. That Union Pacific and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, be enjoined from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

3. For an award of damages arising from loss of past and future income, emotional distress, and other compensatory damages in excess of $75,000.00;

4. For liquidated damages and punitive damages as allowed by law;

5. For an award of pre-judgment interest pursuant to law;

6. For an award of Otis's costs, disbursements and attorneys' fees pursuant to law;

7. For all relief available under the ADA and ADEA;

8. For such other and further relief available by statute; and

9. For such other and further relief as the Court deems just and equitable.

Date: January 26, 2018

**NICHOLS KASTER, PLLP**

*s/ Charles A. Delbridge*
David E. Schlesinger (MN #0387009)*
schlesinger@nka.com

Charles A. Delbridge (MN #0386639)*
cdelbridge@nka.com
80 South Eighth Street
4600 IDS Center
Minneapolis, Minnesota 55402-2242
Telephone: (612) 256-3200
Fax: (612) 338-4878
*Applications for Pro Hac Vice admission forthcoming*

*and*

**NEWKIRK ZWAGERMAN, PLC**

*/s/ Thomas Newkirk*
Thomas Newkirk, AT
tnewkirk@newkirklaw.com
Jill Zwagerman, AT
jzwagerman@newkirklaw.com
521 E Locust, Suite 300
Des Moines, IA 50309
Telephone: 515-883-2000
Fax: 515-883-2004

**ATTORNEYS FOR PLAINTIFF**